[Sac. No. 4716. In Bank.—December 1, 1933.]

LUCY CARDOZA et al., Respondents, v. W. T. WHITE, as Sheriff of the County of Merced, etc., et al., Appellants.

Ernest S. Leslie and E. H. Christian for Appellants.

Whitehurst & Logan for Respondents.

LANGDON, J.—This is an action to quiet title. In 1924 Antonio B. Nunes owned real property in Merced County. He borrowed the sum of $2,600 from the First National Bank of Livermore, to secure which loan he executed a deed of the land to J. H. Callaghan on September 27, 1924. He delivered this deed to Callaghan, stating that if anything should happen to him, the property was to go to his daughter, plaintiff Lucy Cardoza. On May 12, 1926, Nunes paid the indebtedness, Mrs. Cardoza contributing the sum of $900

to said payment, and Nunes requested Callaghan to convey the property to her. Callaghan thereupon executed a deed to her.

Meanwhile, on July 10, 1925, Frank Rodrigues obtained judgment in Alameda County in the sum of $1222.86 against Nunes, in an action on a promissory note. Execution being unsatisfied as to a balance of $992.23, Rodrigues assigned the judgment to defendant E. H. Christian on February 18, 1927. Christian proceeded to execute in Merced County, with the same negative result. Then, on December 3, 1928, he brought an action in Merced County against Nunes and Mrs. Cardoza to set aside the deed from Callaghan. A demurrer to his complaint was sustained, and upon his failure to amend, judgment was rendered against him. He took no appeal, but proceeded to execute directly on the property standing in the name of Mrs. Cardoza. The sheriff gave notice of sale, and this suit was then commenced by Mrs. Cardoza to quiet her title and enjoin the sale. The trial court gave its judgment in favor of plaintiff, and defendants appeal.

Appellants make no claim of fraudulent transfer, and the facts dispose of any possible claim of priority in time, for plaintiff received the deed on May 12, 1926, and no abstract of the Alameda judgment was recorded in Merced County until long afterwards. The theory upon which they rest is that the deed from Nunes to Callaghan was intended merely as security, that Callaghan thereby became only a mortgagee, and that consequently he had no legal title which he could convey to Mrs. Cardoza. ▆ But the authorities cited do not sustain this theory, for they go no further than to state the familiar proposition that a deed made *solely* for security will, when attacked by the grantor, be construed as a mortgage in accordance with the real intent of the parties. (See *McGuigan* v. *Millar*, 117 Cal. App. 739 [4 Pac. (2d) 607]; *Chapman* v. *Hicks*, 41 Cal. App. 158 [182 Pac. 336].)

▆ In the instant case we have something more than a mortgage intended by the parties. Nunes, at the time of making the deed to Callaghan, desired that the latter should have power to convey to Mrs. Cardoza. The testimony establishes without conflict that he originally instructed Callaghan to convey to her if something should happen to him; and

later he modified his instructions by directing Callaghan to convey to her upon payment of the loan. We have, then, a case where the owner of property transfers title thereto, with the intention that the grantee shall subsequently convey that title to another. In the absence of fraud or other inequitable purpose, we see no reason why this intention, either in its original form or as subsequently modified (see Civ. Code, sec. 2258), might not be given effect as a trust. This conclusion finds full support in the case of *Renton* v. *Gibson*, 148 Cal. 650 [84 Pac. 186, 187], where the court said (p. 655): "We say, therefore, that the complaint itself, taken with the plaintiff's evidence in support of it, establishes that the instrument was something more than a mere mortgage, and that it did convey, and must of necessity have conveyed, the legal title to the property to defendant Gibson, for the purposes contemplated—the prosecution and commencement by Gibson, of a suit to quiet title to the land in question, and the procuring of a decree of the court to that effect. So far as these purposes were concerned the transfer could not have been a mortgage. It is only those transfers made as security for an act (other than transfers in trust) which are mortgages (Civ. Code, sec. 2924), and as it was contemplated between parties that an act should be done by defendant in relation to the real property, which act could not lawfully have been performed by him if he were not the holder and owner of the legal title, it must follow that the conveyance was what it purported to be on its face, a deed either absolute or in trust for the indicated purposes."

Defendants argue that the transaction cannot be upheld as a trust because while the deed was in writing, the agreement constituting the trust was oral, and, hence, violative of the statute of frauds. (Civ. Code, sec. 852.) But an oral trust in real property cannot be held wholly void; it is merely unenforceable when, in an action brought to compel performance of its terms, the party to be charged asserts its invalidity. Callaghan, the party obligated, did not refuse to recognize the trust. On the contrary, he carried out its terms. A creditor of the trustor has no right to challenge the voluntary completed performance by a trustee in such a situation. Indeed, if Callaghan had repudiated his obligation, plaintiff, as the intended beneficiary,

could have held him as *constructive trustee* for her benefit. (See *Lauricella* v. *Lauricella,* 161 Cal. 61 [118 Pac. 430].)

The judgment is affirmed.

Thompson, J., Seawell, J., Waste, C. J., Shenk, J., Curtis, J., and Preston, J., concurred.